# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| NSEW HOLDINGS LLC | § | |
| | § | |
| v. | § | Civil Action No. 4:15-CV-828 |
| | § | (Judge Mazzant/Judge Nowak) |
| WELLS FARGO BANK, N.A. | § | |

## MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. On December 6, 2016, the report of the Magistrate Judge (Dkt. #50) was entered containing proposed findings of fact and recommendations that Defendant Wells Fargo Bank, N.A.'s ("Defendant") Motion for Final Summary Judgment Against Plaintiff's Claims and in Support of Its Own Claims ("Motion for Summary Judgment") (Dkt. #30) be granted. The Magistrate Judge recommended Plaintiff's claims be dismissed with prejudice, and Defendant be granted summary judgment on its counterclaim. Having received the report of the Magistrate Judge (Dkt. #50), having considered each of Plaintiff's timely filed objections (Dkt. #54), Defendant's Response (Dkt. #58), and having conducted a de novo review, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct, and the Court hereby adopts the Magistrate Judge's report (Dkt. #50) as the findings and conclusions of the Court. The Court also considers herein Defendant's Motion for Entry of Final Judgment (Dkt. #56) and Defendant's Supplement to Wells Fargo's Motion for Entry of Final Judgment to Amend Total Amount of Attorney Fees (Dkt. #60).

**BACKGROUND**

This suit arises from the foreclosure of a homeowners' association lien against a property located at 437 Crest View Point Drive, Lewisville, Texas 75067 (the "Property"). The underlying facts recited in the Report and Recommendation are pertinent and thus are restated herein. Lloyd Payne (the "Borrower") purchased the Property on or about March 31, 2000; he financed the purchase with a $143,500 purchase-money, first-lien mortgage loan (the "First Loan") from Provident Home Loans, a Division of Provident Funding Associates, L.P., a California Limited Partnership, secured by a Deed of Trust dated March 31, 2000, and recorded on April 10, 2000. On June 14, 2000, Provident assigned and transferred the First Loan to Norwest Mortgage, Inc., which later became Wells Fargo Home Mortgage, Inc. ("Wells Fargo Mortgage").

On or about December 14, 2001, Borrower refinanced the Property, obtaining a $144,700 second first-lien mortgage loan from Wells Fargo Mortgage (the "Second Loan"), which paid off the Borrower's indebtedness under the First Loan. The Second Loan Deed of Trust included a Renewal and Extension Rider reflecting that the proceeds of the Second Loan were a renewal and extension of the amounts owing from the First Loan. The Renewal and Extension Rider expressly subrogated Wells Fargo Mortgage "to all the rights, powers, and equities of the original owners and holders of the prior promissory notes (whether such current holder shall assign and transfer its respective liens to the holder hereof or shall release its respective liens upon satisfaction of the indebtedness owing to such holder)." This deed of trust was recorded on December 26, 2001. Defendant Wells Fargo Bank later succeeded Wells Fargo Mortgage by merger.

Borrower subsequently entered into a Texas Home Equity Note (Fixed Rate – First Lien) with Defendant. This Note was secured by a Texas Home Equity Security Instrument (First Lien), recorded on February 18, 2010, that expressly stated Defendant "shall be subrogated to any and

all rights, superior title, liens and equities owned or claimed by any owner or holder of any liens and debts outstanding immediately prior to the execution hereof, regardless of whether said liens or debts are acquired by [Defendant] by assignment or are released by the holder thereof upon payment." A portion of the proceeds from this Loan, specifically $83,552.89, was used to pay off the remaining balance of the Second Loan.

The Property is part of the Vista Ridge Estates Homeowners Association, and the Declaration of Covenants, Conditions and Restrictions for Vista Ridge Estates (the "HOA Declaration") authorizes Vista Ridge Estates Homeowners Association to charge assessments to their property owners. The HOA Declaration explicitly empowers Vista Ridge Estates Homeowners Association to secure the payment of assessments levied on the Property by lien; however, "such lien shall be specifically made secondary, subordinate and inferior to all liens, present and future, given, granted and created by or at the insistence of the [Borrower] . . . to secure the payment of monies advanced on account of the purchase price and/or the improvement of [the Property]." Vista Ridge Estates Homeowners Association executed a lien on the Property on April 25, 2013 to secure the payment of assessments levied on the Property, and subsequently foreclosed on such interest. On May 5, 2015, the Sheriff of Denton County, Texas conducted a foreclosure sale, at which Plaintiff NSEW Holdings LLC ("Plaintiff") purchased the Property for $40,100, and the Sheriff's Deed was recorded on May 7, 2015.

The Magistrate Judge entered a report and recommendation on December 6, 2016, recommending Defendant's Motion for Summary Judgment be granted (Dkt. #52). Specifically, the Magistrate Judge recommended that the Court find as follows: (1) Defendant is entitled to contractual subrogation; (2) Defendant is entitled to equitable subrogation; (3) the HOA Declaration establishes the homeowners' association's lien is expressly subordinate to Defendant's

lien; (4) Defendant is entitled to a declaratory judgment; and (5) Defendant's lien is valid to the extent the lien is subrogated to the purchase money liens, attorney's fees, hazard insurance, and real property taxes. Subsequently, on December 20, 2016, Plaintiff filed its objections to the Magistrate Judge's report and recommendation (Dkt. #54). Also on December 20, 2016, Defendant filed its Motion for Entry of Final Judgment (Dkt. #56). On January 3, 2017, Defendant filed its Response to Plaintiff's objections to Magistrate Judge's Recommendation (Dkt. #58). On January 27, 2017, Defendant filed its Supplement to Wells Fargo's Motion for Entry of Final Judgment to Amend Total Amount of Attorney Fees (Dkt. #60). To date, Plaintiff has failed to file a response to either Defendant's Motion for Entry of Final Judgment and/or its Supplement.

**ANALYSIS**

Under the law, a party who files timely written objections to a magistrate judge's report and recommendation is entitled to a de novo determination of those findings or recommendations to which the party specifically objects. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b)(2)-(3). Plaintiff objects to each of the Magistrate Judge's findings; specifically, Plaintiff argues that: (1) contractual subrogation does not apply; (2) equitable subrogation does not apply; (3) the HOA Declaration did not subordinate assessment liens to Defendant's lien; (4) Defendant is entitled to a declaratory judgment; and (5) Defendant is not entitled to recover attorney's fees or prior escrow advances. The Court now addresses each of Plaintiff's objections in turn.

*Objection 1: Contractual Subrogation*

Plaintiff first objects to the Magistrate Judge's finding that contractual subrogation applies. Plaintiff argues that the Magistrate Judge conflates contractual subrogation with equitable subrogation and improperly relied on cases analyzing equitable subrogation rather than contractual subrogation—specifically *Vogel v. Veneman*, 276 F.3d 729, 735 (5th Cir. 2002), and *TFHSP LLC*

*v. Wells Fargo Bank, N.A.*, No. 4:12CV554, 2013 WL 12114023, at *1 (E.D. Tex. May 21, 2013). Plaintiff is incorrect. The Fifth Circuit in *Vogel* specifically held that a chain of financings from one lienholder to another, in which each lender advanced money to extinguish prior amounts owing, and executed a deed of trust on the property at issue, established that the subsequent lienholder was both equitably *and* contractually subrogated to the previous lienholder's valid purchase money lien. 276 F.3d at 735 ("The chain of financings from Westside to FSA, in which each lender advanced money to extinguish prior amounts owing, and executed a deed of trust on the property, establish that FSA was both equitably and contractually subrogated to Westside's valid purchase money lien on the Vogels' homestead."). Plaintiff similarly argues that *TFHSP LLC* "relies on considerations arising out of *equitable* subrogation, not *contractual*." One court in the Eastern District of Texas found in *TFHSP LLC* that the homeowner's association assessment lien therein was contractually subrogated to the valid purchase money lien when "the chain of financings from Sebring to Bank of America in which money was advanced to extinguish prior amounts owing, coupled with the assignment from Bank of America to Wells Fargo." *TFHSP LLC*, 2013 WL 12114023, at *2. The case law relied upon by the Magistrate Judge, contrary to Plaintiff's assertion, discusses contractual subrogation.[1]

Moreover, here, as in *Vogel*, Defendant has proffered competent summary judgment evidence showing a chain of financing from Provident Home Loans to (Norwest Mortgage, Inc., which later became Wells Fargo Mortgage, and subsequently) Defendant in which money was

---

[1] Plaintiff also argues that *Leonard v. Brazosport Bank of Tex.*, 628 S.W.2d 216, 219 (Tex. App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.) is distinguishable because the plaintiff was in privity with the party seeking contractual subrogation. This argument is unavailing because, as the Magistrate Judge properly concluded, "contractual subrogation arises out of privity between one lienholder paying off the prior lienholder, thus stepping into the shoes of the prior lienholder." *Vogel v. Glickman*, 117 F. Supp. 2d 572, 579 (W.D. Tex. 2000) (holding contractual subrogation is created by and between successive lenders; thus, "[c]ontractual privity between the borrower and the new lender is not required").

5

advanced to extinguish prior amounts owing. The Magistrate Judge properly found that Defendant is entitled to contractual subrogation; accordingly, Plaintiff's first objection is overruled.

*Objection 2: Equitable Subrogation*

Plaintiff next objects to the Magistrate Judge's finding that equitable subrogation applies. Plaintiff argues that the Magistrate Judge did not consider the principles of equity, namely that Plaintiff's principal, Jeffrey Morser, and his family will suffer pecuniary loss and would be forced to move from their home. Plaintiff further asserts *AMC Mortgage Services, Inc. v. Watts*, 260 S.W.3d 582 (Tex. App.—Dallas 2008, no pet.) applies to the instant case and dictates a different result from that recommended by the Magistrate Judge. Defendant argues, to the contrary, that the equities favor Defendant and allowing Plaintiff to take the Property free and clear of Defendant's lien despite the fact that Plaintiff conducted an independent title examination of the Property (and thus had actual notice of the lien) would be inequitable and also that *Watts* is readily distinguishable from the instant case.

"Equitable subrogation 'is a legal fiction' whereby an obligation, extinguished by a payment made by a third person, is treated as still subsisting for the benefit of this third person, so that by means of it one creditor is substituted to the rights, remedies, and securities of another." *Bank of Am. v. Babu*, 340 S.W.3d 917, 925 (Tex. App.—Dallas 2011, no pet.); *Premium Plastics v. Seattle Specialty Ins. Servs., Inc.*, No. CIV.A. H-10-3960, 2012 WL 1029528, at *4 (S.D. Tex. Mar. 26, 2012), *aff'd*, 544 F. App'x 287 (5th Cir. 2013). The trial court must balance the equities in view of the totality of the circumstances to determine whether a party is entitled to equitable subrogation. *Babu*, 340 S.W.3d at 926. Factors a court may consider in conducting this balancing test are the negligence of the party claiming subrogation, whether that party had notice of the intervening lien, and whether the intervening lienholder will be prejudiced if equitable subrogation

is allowed. *Id.* The determination of whether subrogation prejudices intervening interests is made as of the time of the transaction supporting subrogation, and the consequences of subsequent transactions or events are not relevant to this inquiry. *Id.*

Assuming *arguendo* that the HOA assessment lien in this case was in fact an intervening interest to Defendant's liens (discussed more fully *infra*), equity does weigh in favor of allowing Plaintiff to take the Property free and clear. Plaintiff argues—unsupported by case law—that forcing the Plaintiff's principal and his family to move out of the Property which they use as their homestead would cause prejudice. Courts must however determine whether subrogation prejudices an interest by looking to the time of the transaction; the consequences of subsequent events are not relevant therefore to the Court's analysis. *Id.*; *see Sonia Vou Books, LLC v. BAC Home Loans Servicing, LP*, No. CIV.A. H-11-1809, 2011 WL 3438435, at *3 (S.D. Tex. Aug. 5, 2011) ("Texas law clearly provides that a purchaser at a foreclosure sale takes the property subject to any properly filed lien."). As such, the fact that Plaintiff's principal and his family now occupy the Property—an event which occurred well after the creation of the HOA assessment lien—is generally not relevant to the Court's determination of whether subrogation prejudices Plaintiff's interest. Moreover, Plaintiff conducted an independent examination of the Property, and thus had actual notice of the lien.

Plaintiff further argues that the Fifth District Court of Appeals decision in *Watts* should instruct the Court's analysis of equitable subrogation in this case. In *Watts*, Lillie Gonzalez purchased a property in 1996 with two loans, one from Long Beach Mortgage, secured by a deed of trust, and one from the seller, Richard Smith, secured by a deed of trust stating it was subordinate to the Long Beach deed of trust. *AMC Mortg. Servs., Inc.*, 260 S.W.3d at 584. Smith subsequently sold and assigned his note and deed of trust to HSH Corporation. *Id.* In 1999, Gonzalez refinanced

7

the Long Beach loan with a loan from "Ameriquest," and Ameriquest filed a release of lien applicable to the Long Beach deed of trust. *Id.* In September 2000, Gonzalez obtained a home equity extension of credit from Ameriquest. *Id.* In November 2000, Ameriquest filed a release of lien that specifically identified and released the 1999 deed of trust and stated, "Further, Holder hereby releases the property from all other liens held by Holder." *Id.* In October 2003, Gonzalez obtained another home equity extension of credit from Ameriquest. *Id.* Ameriquest executed and filed of record a release of the 2000 deed of trust in November 2003. *Id.* Gonzalez then later defaulted on the note to Smith that had been assigned to HSH Corporation. *Id.* At a May 2005 foreclosure sale, HSH Corporation sold the property to the Wattses. *Id.* In December 2005, Ameriquest foreclosed on the 2003 home equity loan. *Id.* Ameriquest filed suit to evict the Wattses, and the Wattses sued to quiet title. *Id.* The court of appeals stated, in part, that the summary judgment evidence showed the Wattses purchased the property with "full knowledge and constructive notice" that the 1999 lien had been released, and nothing showed the 1996 Smith deed of trust did not become the superior lien. *Id.* at 587. Further, the court stated, "Nothing in the summary judgment evidence shows [the Wattses] were on notice of the claim that equitable subrogation made the November 2003 deed of trust a renewal of the 1999 deed of trust." *Id.*

Unlike *Watts* where the Wattses purchased an interest that was created before the 2000 home equity extension of credit, here, the interest Plaintiff purchased—the HOA assessment lien—was created subsequent to the creation and recording of each of Defendant's liens. For example, the Fourth Loan Security Instrument was recorded on February 12, 2010, while the Vista Ridge Estates Homeowners Association's lien was not executed until April 25, 2013. Plaintiff asserts Defendant's lien is subsequent in time, but absolutely no evidence exists to support Plaintiff's assertion. Vista Ridge Estates Homeowners Association's lien could not be an intervening

lienholder here when it was executed and recorded more than three years in time after the Fourth Loan Security Instrument. In addition, the summary judgment evidence shows an unbroken chain of financing from one lien to the next secured by deeds of trust expressly demonstrating Defendant's entitlement to subrogation. Further, each of the deeds of trust were properly recorded in the official records of Denton County, Texas, prior to the foreclosure sale at which Plaintiff purchased its interest in the Property. *Watts* is readily distinguishable. There is no fact issue regarding whether the liens at issue here were recorded prior to the date the assessments became due; Defendant is entitled to equitable subrogation. *Vogel*, 276 F.3d at 735. Plaintiff's second objection is overruled.

***Objection 3: Subordination of Assessment Lien by HOA Declaration***

Plaintiff also objects to the Magistrate Judge's finding that the HOA Declaration expressly subordinated the HOA lien to Defendant's lien. Plaintiff argues that the Magistrate Judge improperly relied upon *TFHSP LLC* to make such finding and that the HOA Declaration in this case is more narrow than that in *TFHSP LLC*. In *TFHSP LLC*, the Court held that a Deed of Trust related to a refinance loan was superior to a homeowners' association assessment lien when the conditions of the subsequent loans were expressly included in the language of the homeowners' association declaration. Notably, the Magistrate Judge did not apply language from the Declaration of Covenants, Conditions & Restrictions in *TFHSP LLC* to find subordination in this case, but rather applied the express language from Vista Ridge Estates Homeowners Association's HOA Declaration, thus the fact that the HOA Declaration may be narrower is not relevant. Indeed, here, the HOA Declaration empowered Vista Ridge Estates Homeowners Association to secure the payment of assessments levied on the Property by lien; however, "such lien shall be specifically made secondary, subordinate and inferior to all liens, present and future, given, granted and created

9

by or at the insistence of the [Borrower] . . . to secure the payment of monies advanced on account of the purchase price and/or the improvement of [the Property]." Competent summary judgment evidence reflects the proceeds from Defendant's loans were used to satisfy previous liens securing the loans for the purchase price; Defendant's lien was granted to secure the payment of monies advanced on account of the purchase price and/or improvement of the Property. Accordingly, the HOA Declaration expressly subordinated the HOA assessment lien to Defendant's lien. Defendant's lien is superior. Plaintiff's third objection is overruled.

*Objection 4: Defendant's Counterclaim*

Plaintiff objects to the Court's finding that Defendant's counterclaim should be granted. Plaintiff argues that the Magistrate Judge relied on the erroneous findings regarding Defendant's entitlement to contractual and equitable subrogation, and that the HOA Declaration expressly subordinated the HOA assessment lien to Defendant's lien in recommending that Defendant's counterclaim be granted. Because the Court has already adopted the Magistrate Judge's findings for each of these issues, the Court agrees that summary judgment should be granted in favor of Defendant on its counterclaim. Plaintiff's fourth objection is overruled.

*Objection 5: Extent of Subrogation*

Plaintiff's final objection relates to the Magistrate Judge's determination that Defendant is entitled to recover attorney's fees and/or prior escrow advances. Plaintiff asserts Defendant is not entitled to recover any attorney fees or prior escrow amounts and asks the Court to deny all fees. Plaintiff again cites *Watts* in support. Defendant asks by way of its Motion for Entry of Final Judgment (Dkt. #56) and Supplement to Wells Fargo's Motion for Entry of Final Judgment to Amend Total Amount of Attorney Fees (Dkt. #60) that the Court affirm the recommendation of

the Magistrate Judge and further award additional attorney's fees accrued following the filing of Defendant's Motion for Summary Judgment.

In support of its position that fees are not warranted, Plaintiff turns again to *Watts*. In *Watts*, the Fifth District Court of Appeals reversed the trial court's award for attorney's fees in conjunction with a declaratory judgment pursuant to Texas Civil Practice and Remedies Code § 37.009. 260 S.W.3d at 588. In Texas, attorney's fees may not be recovered from an opposing party unless such recovery is provided for by statute or by contract between the parties. *Id.* The court found that a party may not recover attorney's fees under section 37.009 when the only issues, aside from attorney's fees, concern clearing title or trespass to try title. However, the Magistrate Judge did not find that Defendant was entitled to its attorney's fees under section 37.009, but rather that Defendant was entitled to its attorney's fees under the language of the First Loan Deed of Trust, which permits recovery of attorney's fees incurred to protect Defendant's interest in the property or rights under the Deed of Trust. As such, the Court adopts the Magistrate Judge's recommendation that Defendant is entitled to attorney's fees.

### *Entry of Final Judgment*

The Court now turns to Defendant's request for entry of final judgment and request therein for interest and additional attorney's fees. Defendant is entitled to any interest that accrues on the money paid to satisfy the balance of the Second Loan and any future escrow advances. *See, e.g.*, *Vogel*, 276 F.3d at 736; *Chase Home Fin., L.L.C. v. Cal W. Reconveyance Corp.*, 309 S.W.3d 619, 634 (Tex. App.—Houston [14th Dist.] 2010). Defendant is also entitled to its attorney's fees incurred to protect its interest in the Property. *See In re Velazquez*, 660 F.3d 893, 899 (5th Cir. 2011); *see also King v. Wells Fargo Bank, N.A.*, No. 3-11-CV-0945-M-BD, 2012 WL 3283473, at *1 (N.D. Tex. July 10, 2012), *report and recommendation adopted*, No. 3-11-CV-0945-M-BD,

2012 WL 3289961 (N.D. Tex. Aug. 13, 2012), *aff'd*, 533 F. App'x 431 (5th Cir. 2013). The Magistrate Judge found Defendant entitled to $39,350.33 for fees and costs allowed under the Deed of Trust; Defendant, in its Motion for Entry of Final Judgment (Dkt. #56) and Supplement (Dkt. #60) seeks additional attorney's fees incurred since filing its Motion for Summary Judgment.

As an initial matter, Defendant avers in its Supplement to Wells Fargo's Motion for Entry of Final Judgment to Amend Total Amount of Attorney Fees (Dkt. #60) that "counsel for Wells Fargo has learned that on account of a billing software upgrade, the August 19, 2015 invoice, which Wells Fargo submitted with its motion for summary judgment was rejected (after the motion for summary judgment was filed) and the time entries contained on the August 19, 2016 invoice were billed on subsequent invoices" (Dkt. #60 at 2). "[T]o correct the discrepancies in its prior filings and ensure the Court has accurate information," Defendant filed its "Supplement to its Motion for Entry of Final Judgment to amend the total amount of attorney fees that should be included in the mortgage indebtedness secured by Wells Fargo's lien" (Dkt. #60 at 2). That amount is $69,235.69. Plaintiff has not objected or filed any response to these invoices.

To reiterate, the Court adopts the Magistrate Judge's recommendation that Defendant is entitled to attorney's fees in this case; however, in light of Defendant's averment that there were discrepancies in its prior filings, the Court uses the affidavit and invoice attached to the Supplement to Wells Fargo's Motion for Entry of Final Judgment to Amend Total Amount of Attorney Fees to make a de novo determination as to the total amount of reasonable attorney's fees recoverable under the First Loan Deed of Trust. The Court uses the lodestar method to calculate attorney's fees. *Iglehart v. Wells Fargo Bank, N.A.*, No. 4:13-CV-131, 2015 WL 5813400, at *2 (E.D. Tex. Sept. 30, 2015) (applying lodestar method to calculate reasonable attorney's fees under a mortgage contract); *see also TFHSP, LLC Series 10147 v. U.S. Bank Nat'l Ass'n*, No. 3:14-CV-2589-M-BN,

2016 WL 2856006, at *4 (N.D. Tex. Apr. 18, 2016) (same), *report and recommendation adopted sub nom. TFHSP, LLC v. U.S. Bank Nat'l Ass'n*, No. 3:14-CV-2589-M-BN, 2016 WL 2853565 (N.D. Tex. May 13, 2016), *appeal dismissed* (July 20, 2016); *Simicek v. Wells Fargo Bank, N.A.*, No. CIV.A. H:12-1545, 2013 WL 5425126, at *5 (S.D. Tex. Sept. 26, 2013) (same). The lodestar is calculated by multiplying the number of hours that an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. *See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). The parties seeking reimbursement of attorney's fees bear the burden of establishing the number of hours expended through the presentation of adequately recorded time records as evidence. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

To determine the amount of reasonable attorney's fees, the Court must thus review the records and exclude all time that is excessive, duplicative, or inadequately documented. *See Hensley v. Eckerhart*, 103 S. Ct. 1933, 1939 (1983); *Von Clark v. Butler*, 916 F.2d 255, 259 (5th Cir. 1990). The hours that survive this vetting process are those reasonably expended on the litigation. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The court then must determine a reasonable hourly rate. "Where counsel requests compensation at his normal billing rate and that rate is shown to be within the range of market rates for attorneys of similar skill and experience, the burden is on the opposing party to show that a lower rate should be used." *United States v. Cornerstone Wealth Corp., Inc.*, No. 3–98–CV–0601–D, 2006 WL 1524592 at *2 (N.D. Tex. Jun. 2, 2006), *citing Islamic Ctr. of Miss., Inc. v. City of Starkville*, 876 F.2d 465, 469 (5th Cir. 1989); *see also Watkins*, 7 F.3d at 459 (court must articulate reasons for rejecting normal billing rate). Once the Court calculates the "lodestar" fee, the lodestar may be adjusted upward or downward depending on the twelve (12) factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488

F.2d 714 (5th Cir. 1974). These factors are: (1) the time and labor required for the case; (2) the novelty and difficulty of the issues involved; (3) the skill required to litigate the case; (4) the ability of the attorney to accept other work; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances of the case; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the attorney-client relationship; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19; *see also Shipes v. Trinity Indus.*, 987 F.2d 311, 319-20 (5th Cir.), *cert. denied*, 510 U.S. 991 (1993). Of these factors, the court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation, and ability of counsel. *See Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). There is a strong presumption of the reasonableness of the lodestar amount. *See Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010). Because the lodestar is presumed to be reasonable, it should be modified only in exceptional cases. *See Watkins*, 7 F.3d at 457.

Defendant is represented by Locke Lord LLP in this matter. The Court has considered the declaration of Robert Mowrey, a Locke Lord LLP partner, who declares, under penalty of perjury, that he has been licensed in the state of Texas and has practiced in commercial litigation, including consumer finance and mortgage litigation. Mowrey declares that Locke Lord partner Jennifer Kinney Parnell and associates Matthew B. Buongiorno and Matthew K. Hansen regularly assisted him in this matter. Mowrey declares he received limited assistance from partners Jason L. Sanders and Johnathan Collins. Mowrey also received assistance from Locke Lord paralegals and litigation assistance employees M. Barras, A. Wilson, Nelsene Richards, Shelly Sheets, and M. Robbins, and Lee Bernstein. Mowrey's billing rate is $569.00, Sanders' rate is $439.00, Collins' and Kinney

Parnell's rates are $321.00 each, Buongiorno's and Barras' rates are $325.00 each, Hansen's rate is $258.00, Wilson's rate is $250.00, Richards', Sheets', and Robbins' rates are $180.00 each, and Bernstein's rate is $150.00. Mowrey declares that "[t]he rates and fees charged for work done by Locke Lord attorneys, paralegals, and litigation assistance employees in this matter are both reasonable and consistent with the rates charged by comparable firms in Texas[,] . . . [and] consistent with the rates charged by Locke Lord in similar matters in which Locke Lord represents Wells Fargo." Mowrey further avers that the total amount of fees incurred (not including taxable costs, discussed *infra*) is $69,235.69 and resulted from no duplication of effort.

Defendant also submitted Locke Lord's billing invoices to establish the number of hours that Locke Lord expended in this matter. The invoices show that Locke Lord performed legal work to advance Defendant's counterclaims and protect Defendant's interest in the Property. Locke Lord charged U.S. Bank for the following hours expended by the aforementioned attorneys, paralegals, and litigation support employees: Mowrey—10.4; Sanders—2.7; Collins—8.3; Kinney Parnell—21.6; Buongiorno—83.2; Hansen—91.8; Barras—2.8; Wilson—2.5; Richards—3.4; Sheets—8.8; Robbins—1.4; and Bernstein—0.3. Plaintiff has not contested any of the hours performed by Defendant's counsel as duplicative, excessive, or otherwise improper. *See KeyCorp v. Holland*, No. 3:16-CV-1948-D, 2017 WL 606617, at *7 (N.D. Tex. Feb. 15, 2017) ("Further, if a party does not object to particular billing entries as inadequately documented, the court is not obligated *sua sponte* to sift through fee records searching for vague entries or block billing. It is a common practice for courts to address only those potentially inadequate entries brought to the court's attention."). Nonetheless, the Court has independently reviewed the billing invoices and has found no duplicative, excessive, or otherwise improper hours billed therein.

The Court finds that the rates charged by Locke Lord for Mowrey, Sanders, Collins, Kinney Parnell, Buongiorno, Hansen, Barras, Wilson,[2] Richards, Sheets, Robbins, and Bernstein's efforts are consistent with the prevailing rates in Dallas County. The Court concludes that the requested hourly rates enumerated in Mowrey's declaration are reasonable and within the market rate for attorneys handling this type of litigation in the Dallas area. *See generally Iglehart*, 2015 WL 5813400, at *3 (finding Robert Mowrey's $564.00 hourly rate as reasonable); *Fashina v. Fed. Home Loan Mortg. Corp.*, No. 3:12-CV-822-N-BK, 2013 WL 5300652, at *2 (N.D. Tex. Sept. 20, 2013) ("The Court also finds that the hourly rates charged by Defendant's counsel, ranging from $200 to $564 an hour, and $180 per hour for paralegals, were reasonable."); *Vanliner Ins. Co. v. DerMargosian*, No. 3:12–cv–5074–D, 2014 WL 1632181, at *2 (N.D. Tex. Apr. 24, 2014) (noting that the Court is an expert regarding reasonableness of attorneys' fees).

The undersigned concludes that the appropriate lodestar here to be calculated as 10.4 hours for Mowrey at $569.00 an hour ($5,917.60), 2.7 hours for Sanders at $439.00 an hour ($1,185.30), 8.3 hours for Collins at $321.00 an hour ($2,664.30), 21.6 hours for Kinney Parnell at $321.00 an hour ($6,933.60), 83.2 hours for Buongiorno at $325.00 an hour ($27,040.00), 91.8 hours for Hansen at $258.00 an hour ($23,684.40), 2.8 hours for Barras at $325.00 an hour ($910.00), 2.5 hours for Wilson at $250.00 an hour ($625.00), 3.4 hours for Richards at $180.00 an hour ($612.00), 8.8 hours for Sheets at $180.00 an hour ($1,584.00), 1.4 hours for Robbins at $180.00 an hour ($252.00), and 0.3 hours for Bernstein at $150.00 an hour ($45.00), for a total of $71,453.20. The Court notes that Mowrey avers that prior to invoicing Defendant, he "sometimes reduce[s] the amount of time which was billed to Defendant . . . to ensure that all time billed was reasonable" (Dkt. #60, Exhibit A at 5). Indeed, the invoices at issue herein reflect a reduction of

---

[2] The invoices reflect A. Wilson's billing rate is $275.00. Through Mowrey's averment as such, the Court determines that $250 is a reasonable rate for Wilson's services.

16

the amount billed to Defendant by $2,280.01; such reduction would bring the attorney's fee total to $69,173.19. The Court, upon review of the evidence and after giving due consideration to the relevant *Johnson* factors, Mowrey's declaration, and Locke Lord's invoices, concludes that a total of $69,173.19 is a reasonable and appropriate attorney's fee in this case.

Defendant also seeks $1,854.15[3] in costs apart from attorney's fees. The Court must determine whether these costs are "reasonable" under the language of the First Loan Deed of Trust. Taxable court costs include: (1) fees paid to the clerk and marshal; (2) court reporter fees for all or part of the deposition transcript; (3) printing costs and witness fees; (4) fees for copies of papers necessarily obtained for use in the case; (5) certain docket fees; and (6) compensation of court appointed experts and interpreters. *See* 28 U.S.C. § 1920. Locke Lord's billing invoices show that Wells Fargo's costs consists of $86.60 in title report charges (research); $680.55 in postage; $434 in filing fees to the clerk; and $3.00 for Secretary of State inquiries (research); and $650 in mediator fees. Defendant is limited to the categories of costs recoverable under 28 U.S.C. § 1920. *See Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1045 (5th Cir. 2010). Section 1920 does not permit recovery of mediator fees, research costs, or postage. *See Condon v. Hunting Energy Servs. L.P.*, No. CIV.A. H-04-3411, 2006 WL 2882857, at *7 (S.D. Tex. Oct. 4, 2006) (mediation fees not recoverable under § 1920); *Gomez v. Managing Innovation & Tech., Inc.*, 3:14–CV–0936–M, 2015 WL 6150905, at *2 (N.D. Tex. Oct. 15, 2015) (court declined to award costs for research); *Auto Wax Co. v. Mark v. Prods., Inc.*, No. 3:99-CV-982-M, 2002 WL 265091, at *5 (N.D. Tex. Feb. 22, 2002) (Lynn, J.) (postage and delivery fees are not recoverable under § 1920). The Court finds $434.00 for Defendant's filing fee is included under the reasonable attorney fee language in

---

[3] The Court arrives at this number by adding up the fees charged to Wells Fargo through each invoice. However, Mowrey avers that "[t]he amended figure for the total amount of expenses Wells Fargo has been billed in this matter from the beginning of this case through December 20, 2016 is $1,854.69." This appears to be in error.

the First Loan Deed of Trust. Accordingly, the Court finds Defendant is subrogated as to $69,607.19[4] for the total attorney's fees and costs allowed under the Deeds of Trust.

Defendants' Motion for Entry of Final Judgment (Dkt. #56) and Defendant's Supplement to Wells Fargo's Motion for Entry of Final Judgment to Amend Total Amount of Attorney Fees (Dkt. #60) are **GRANTED**, and Defendant is entitled to subrogation in the amount of $189,295.18, comprised of $83,552.89 paid to satisfy the balance of the Second Loan, $69,607.19 in attorney's fees, $17,007.63 in hazard insurance, and $19,127.47 in property taxes, as well as any interest on the balance of the Second Loan and escrow advances that continue to accrue.

## CONCLUSION

Having received the report of the United States Magistrate Judge, having considered each of Plaintiff's timely filed objections (Dkt. #54), Defendant's Response (Dkt. #58), Defendant's Motion for Entry of Final Judgment (Dkt. #56), Defendant's Supplement to Wells Fargo's Motion for Entry of Final Judgment to Amend Total Amount of Attorney Fees (Dkt. #60), and having conducted a de novo review, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and adopts the Magistrate Judge's report (Dkt. #50) as the findings and conclusions of the Court.

It is, therefore, **ORDERED** that Defendant Wells Fargo Bank, N.A.'s Motion for Final Summary Judgment Against Plaintiff's Claims and in Support of Its Own Claims (Dkt. #30) is **GRANTED**, and Plaintiff's claims against Defendant Wells Fargo Bank, N.A. are **DISMISSED** with prejudice.

It is further **ORDERED** that Defendant's Motion for Entry of Final Judgment (Dkt. #56) and Defendant's Supplement to Wells Fargo's Motion for Entry of Final Judgment to Amend Total

---

[4] The Court reaches this amount by adding the total amount of fees recoverable, $69,235.69, to the total amount of costs recoverable, $434.00.

Amount of Attorney Fees (Dkt. #60) are **GRANTED**.  Defendant is entitled to subrogation in the amount of $189,295.18, comprised of $83,552.89 paid to satisfy the balance of the Second Loan, $69,607.19 in attorney's fees, $17,007.63 in hazard insurance, and $19,127.47 in property taxes, as well as any interest on the balance of the Second Loan and escrow advances that continue to accrue.

    **IT IS SO ORDERED.**

    **SIGNED this 17th day of March, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE